UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 17-CV-0864 (JFB)
_____

THOMAS G. TAGLIAFERRO,

Plaintiff,

VERSUS

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_____

**MEMORANDUM AND ORDER**
September 28, 2018
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Thomas G. Tagliaferro commenced this action under 42 U.S.C. § 405(g) of the Social Security Act to challenge the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying plaintiff's waiver of overpayment under 42 U.S.C. § 404(b).

Plaintiff now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The Commissioner opposes the motion and cross-moves for judgment on the pleadings. For the reasons set forth below, the Court denies plaintiff's motion for judgment on the pleadings, and grants the Commissioner's cross-motion for judgment on the pleadings.

I. BACKGROUND

The following summary of the relevant facts is based on the Administrative Record. (ECF No. 13.) A more exhaustive recitation is contained in the parties' submissions to the Court and is not repeated here.

A. Personal and Education History

Plaintiff applied for Title II Disability Insurance benefits on August 12, 2005, alleging a February 25, 2004 disability onset date. (AR 24.) After his claim was denied, plaintiff requested a hearing before an Administrative Law Judge. (AR 177.) In the request, plaintiff reported being disabled from February 25, 2004 through November 22, 2005. (*Id.*) Plaintiff also reported that he had "returned to his prior position with is

former employer" on November 23, 2005. (*Id.*)

In a decision dated March 22, 2016, Administrative Law Judge Richard Karpe found plaintiff disabled from February 25, 2005 through November 22, 2005, and awarded retroactive benefits. (AR 181-85.) ALJ Karpe noted that plaintiff had "returned to work on November 23, 2005," but, "[i]n light of the lack of evidence of medical improvement," concluded that plaintiff was "entitled to a trial work period, not exceeding nine months, commencing November 23, 2005." (AR 183.)

On September 9, 2008, the Social Security Administration ("SSA") sent plaintiff a "Notice of Disability Cessation," informing plaintiff that his "disability ha[d] ended" and that he had not been entitled to disability payments as of November 2006. (AR 62.) The letter explained that plaintiff's trial work period ended in July 2006, and that, because he was doing substantial work at that time, he was not entitled to benefits as of November 2006. (*Id.*) The letter further explained that the SSA "pay[s] benefits for the month disability ends and the following 2 months no matter how much is earned," and that, in plaintiff's case, that was "August 2006 through October 2006." (*Id.*) The letter concluded that, "[b]ecause we did not stop your checks until September 2008, you were paid $35,902.10 too much in benefits." (AR 63.)[1]

Thereafter, plaintiff requested that the SSA waive the overpayment. (AR 74.) By letter dated January 16, 2009, the SSA informed plaintiff that it could not approve his request based on the facts before it, and informed plaintiff that he had "a right to meet with us before we decide if you have to pay back the overpayment." (*Id.*)

On February 10, 2009, plaintiff participated in an in-person meeting about the waiver of overpayment. (AR 72-75.) Approximately two weeks later, on February 27, 2009, the SSA sent plaintiff a letter advising him that he did not meet the criteria to waive the overpayment. (AR 78-79.)

Plaintiff then requested a hearing before an ALJ. A hearing was held before Administrative Law Judge Seymour Rayner on September 3, 2009, and on October 26, 2009, ALJ Rayner issued a decision denying plaintiff's request for waiver of overpayment. (AR 92-94.) ALJ Rayner found that plaintiff was not without fault for the overpayment because he accepted disability checks while he was still working and did not notify the SSA. (AR 93.)

On December 16, 2009, plaintiff requested review of ALJ Rayner's decision. (AR 96.) The Appeals Council remanded the case for further administrative proceedings because it could not locate the record upon which ALJ Rayner had made his decision. (AR 109.)

On remand, after a supplemental hearing, ALJ Rayner again concluded that plaintiff did not qualify for a waiver. (AR 18-22.) Based on record evidence, ALJ Rayner found that plaintiff "worked while receiving disability insurance benefits and failed to notify the Social Security Administration," and that he "failed to furnish information which he knew or should have known to be material and has accepted payments which he either knew, or could have been expected to know were incorrectly paid." (AR 21.) ALJ Rayner

---

[1] By letter dated September 19, 2008, the SSA revised the amount of overpayment due to $34,340.10 because it was "able to stop [plaintiff's] September 24, 2008 payment." (AR 68.) The amount owed is not in dispute.

2

recommended that plaintiff pay $50 per month to the SSA.[2] (AR 22.)

Plaintiff requested an Appeals Council review, and on February 2, 2012, the request was granted. (AR 214-15.) The Appeals Council noted that ALJ Rayner made inconsistent statements regarding whether, and to what extent, plaintiff was at fault. (AR 215) The Appeals Council also noted that ALJ Rayner failed to address plaintiff's hearing counsel's post-hearing brief. (*Id.*) Accordingly, the Appeals Council remanded the case. (*Id.*)

On remand, the case was assigned to Administrative Law Judge Brian J. Crawley, who held a hearing on October 6, 2014. (AR 449-74.) Plaintiff was represented by counsel at the hearing. On November 24, 2014, ALJ Crawley denied plaintiff's request for waiver of overpayment, finding that plaintiff was not without fault in accepting the overpayment and that, even if plaintiff were without fault, his expenses could be reasonably reallocated to repay the overpayment. (AR 14.)

On December 15, 2016, the Appeals Council denied review of ALJ Crawley's decision, making it the Commissioner's final decision.

II. PROCEDURAL HISTORY

Plaintiff commenced this lawsuit on February 16, 2017. (ECF No. 1.) On February 19, 2018, plaintiff moved for judgment on the pleadings. (ECF No. 16.) The Commissioner opposed plaintiff's motion and submitted a cross-motion for judgment on the pleadings on April 20, 2018. (ECF No. 18.) On May 11, 2018, plaintiff responded to the Commissioner's cross-motion for judgment on the pleadings. (ECF No. 19.) On June 1, 2018, the Commissioner filed a letter indicating that she intended to rest on the arguments in her April 20, 2018 submission. (ECF No. 20.) The Court has fully considered the parties' submissions.

III. STANDARD OF REVIEW

A district court may set aside a determination by an ALJ "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374-75 (2d Cir. 2015) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); 42 U.S.C. § 405(g)). The Supreme Court has defined "substantial evidence" in Social Security cases to mean "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Furthermore, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (citation omitted); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

---

[2] Plaintiff's attorney testified at a subsequent hearing that plaintiff has been paying $50 per month to the SSA since the time of ALJ Rayner's decision. (AR 462.)

3

## IV. DISCUSSION

### A. Waiver of Overpayments

The Social Security Regulations provide that "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment" has been made to an individual, "proper adjustment of recovery shall be made." 42 U.S.C. § 404(a)(1). However,

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

*Id.* § 404(b). In other words, a waiver of overpayment is warranted when "(1) the overpaid person is without fault, and (2) recovery would defeat the purpose of Title II or would be against equity and good conscience." *Ming v. Astrue*, No. 07-CV-4567 (DLI)(SMG), 2009 WL 2495947, at *4 (Aug. 13, 2009). The burden is on the overpaid individual to establish that he is entitled to a waiver. *Id.* (citing 20 C.F.R. § 404.506(c)).

Under the pertinent regulations, an individual is not "without fault" if the overpayments resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect;
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. In making this determination, the SSA is required to consider all relevant facts, including the individual's age, intelligence, and any physical, mental, educational, or linguistic limitations. *Id.*

The Second Circuit interprets 20 C.F.R. § 404.507 "liberally, making it relatively easy for the [SSA] to recover an overpayment." *Barone v. Bowen*, 869 F.2d 49, 51 (2d Cir. 1989). Bad faith is not required to establish fault; rather, "an honest mistake may be sufficient to constitute fault." *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983). Further, any mistake or fault by the SSA does not relieve an individual from repayment if they are found to also be at fault. 20 C.F.R. § 404.507.

However, if an individual accepts an overpayment "because of reliance on erroneous information from [the SSA] . . . with respect to the interpretation of a pertinent provision of the Social Security Act . . ., such individual, in accepting such overpayment, will be deemed to be without fault." *Id.* § 404.510.

Recovery of overpayment "defeats the purpose of Title II" if it "deprive[s] a person of income required for ordinary and necessary living expenses," including fixed living expenses (e.g., food, clothing, rent, mortgage payments, utilities, and insurance), medical expenses, expenses for supporting those for whom the individual is legally responsible, or other expenses reasonably considered part of the individual's standard of living. *Id.* § 404.508(a).

Finally, recovery of overpayment is "against equity and good conscience" if the individual "[c]hanged his or her position for the worse" or "relinquished a valuable right"

4

in reliance on the overpayment. *Id.* § 404.509(a). The applicable regulation states that "[t]he individual's financial circumstances are not material to a finding of against equity or good conscience." *Id.*

The Second Circuit has explained how district courts should review whether the above-described factors are satisfied, in light of the general legal framework for reviewing decisions by the Commissioner:

> The [Commissioner's] determination of whether these factors have been satisfied may not lightly be overturned. First, the district court must uphold a decision by the [Commissioner] that a claimant was not without fault if it is supported by substantial evidence in the record as a whole, because that determination is factual in nature. Further the issues of whether repayment would defeat the purposes of the Act or be against equity or good conscience implicate an exercise of informed judgment, and the [Commissioner] has considerable discretion in making these determinations. Factual determinations by the [Commissioner] in relation to these issues must be upheld if supported by substantial evidence, and the [Commissioner's] exercise of her judgment on the basis of such factual determinations is entitled to considerable deference. The court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.

*Valente*, 733 F.2d at 1041 (citations omitted).

B. The ALJ's Ruling

ALJ Crawley's November 14, 2014 determination, which plaintiff currently challenges, denied plaintiff's request for waiver of overpayment both because plaintiff was not "without fault" and because requiring repayment would not "defeat the purpose of Title II" or "be against equity and good conscience." (*See generally* AR 8-14.)

As to plaintiff's fault, ALJ Crawley explained that plaintiff testified at the hearing that he "was aware of the basic principle that a disability benefits recipient is unable to work and receive[] social security benefits," and understood that "it was permissible to receive disability benefits while working during the trial work period." (AR 13.) ALJ Crawley further concluded that,

> The agency may have sent some confusing notices, granted [plaintiff] cost of living adjustments, and increased the primary insured amount limits because of his work activity, however, [plaintiff's] notifying the Social Security Administration indicates his awareness that receipt of continued payments was problematic. Although the Administration may have been at fault for making an overpayment, that does not relieve that . . . individual from liability for repayment if such individual is [not] without fault.

(AR 13-14.)

ALJ Crawley also found that, even if plaintiff was without fault, recovery of the overpayment would not "defeat the purpose of Title II" or "be against equity and good conscience." (AR 14.) ALJ Crawley found that plaintiff's reported expenses were "not reasonable and appear[ed] inflated." (*Id.*)

5

For instance, ALJ Crawley noted that plaintiff alleged he spent $600 per month on lunch, $300 per month in cigarettes, and $500 per month in gas/car expenses. (*Id.*) From this, ALJ Crawley reasoned that plaintiff could "quite reasonably" reallocate funds to repayment of the overpayment. (*Id.*)

C. Analysis

For the reasons discussed below, after carefully reviewing the administrative record, the Court concludes that ALJ Crawley's determinations are supported by substantial evidence.

First, ALJ Crawley's determination that plaintiff was not without fault is supported by substantial evidence. As noted above, an individual is at fault if, among other things, he accepts "a payment which he knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507. Here, plaintiff testified that when he called the SSA sometime before 2006, he was told that he was "able to collect Social Security for the amount of time [he w]as out, and then a nine-month trial period, and a three-month grace period." (*See* AR 470-71.) Thus, the SSA accurately informed plaintiff, well before his grace period ended, that he would not receive benefits after that time. In other words, plaintiff testified to having *actual knowledge* that he would no longer be entitled to benefits twelve months after he returned to work. Indeed, at the hearing, plaintiff exhibited a clear understanding that employed individuals are generally not entitled to social security benefits. (*See id.*)

The Court concludes that plaintiff's demonstrated understanding of the fact that he could not simultaneously continue working and also receiving benefits is substantial evidence for a finding of fault. *See, e.g.*, *Mesias v. Doe*, No. 11-CV-2373 RRM, 2012 WL 3704824, at *8 (E.D.N.Y. Aug. 24, 2012) (concluding that plaintiff's testimony "reflect[ed] his understanding of the relevance that his working status had on his entitlement to benefits, and therefore the error evident in the continuation of payments," which was "an independent basis" for a finding of fault); *Borodkin v. Barnhart*, No. 06 CIV. 2583 (RWS), 2007 WL 1288602, at *4 (S.D.N.Y. May 2, 2007) (substantial evidence for fault existed where plaintiff "acknowledged that SSA personnel advised him that he could work for a short period and that after that period, SSA would stop his benefits" and, "notwithstanding, [plaintiff] continued to collect benefits for over two and one-half years after returning to work").

Plaintiff's arguments regarding his lack of fault are unpersuasive. For instance, his assertion that he believed his payments would automatically stop when they were supposed to does not undermine a finding that he knew or should have known that he was not entitled to the overpayments— particularly when he continued to receive payments for *nearly two years* after his grace period ended. *See, e.g.*, *Brown v. Bowen*, 905 F.2d 632, 638 (2d Cir. 1990) (plaintiff's contentions that he believed his payments would be automatically adjusted was undermined by the undisputed fact that he continued to receive overpayments for over a year). His argument that the notices he received from the SSA were confusing also do not mandate a finding that he was without fault. *See, e.g.*, *Yankus v. Astrue*, No. 07-CV-0316 (JFB), 2008 WL 4190870, at *5 (E.D.N.Y. Sept. 10, 2008) ("[A] claimant's 'confusion' as to whether she is entitled to benefits does not automatically relieve her of fault for overpayments."); *Howard v. Astrue*, No. 07-CV-1558(NG), 2007 WL 4326788, at *3 (E.D.N.Y. Dec. 7, 2007) ("Howard's confusion with respect to

information provided him by SSA does not render him without fault.").

Finally, plaintiff argues that he is without fault because he notified the SSA that he was working. However, under the relevant regulations, the determination of fault applies only to the individual, and courts do not consider any fault on the part of the SSA. *See* 20 C.F.R. § 404.507. Accordingly, plaintiff cannot rely on the fact that the SSA did not process that plaintiff was no longer entitled to benefits to argue that he is without fault. Moreover, plaintiff's attempts to notify the SSA that he was working provide further evidence that he knew he should not be receiving the payments. *See, e.g.*, *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983) ("The record reflects that appellant was aware of his responsibility to return SSI checks: he admitted at his hearing that he had instructed his father to do so; he filed a statement with SSA on March 8, 1979, in which he requested that SSI benefits be terminated and stated that he had returned the February and March checks . . . ."). Thus, the Court finds that substantial evidence supports ALJ Crawley's conclusion that plaintiff is not without fault.

Second, ALJ Crawley's findings that repayment would not "defeat the purpose of the Title II" or "be against equity and good conscience" are also supported by substantial evidence. As explained, repayment "defeats the purpose of Title II" if it "deprive[s] a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). Here, ALJ Crawley determined that plaintiff could reasonably reallocate certain expenses to repaying the overpayment.

As an initial matter, plaintiff testified at the hearing that, although he reported $500 per month in gas expenses, that amount had decreased to about $240 per month. Accordingly, his decreased gas expenses provide plaintiff with an additional $260 per month from which he can pay his $50 per month repayment. (*See* AR 469-70.) However, even assuming plaintiff still requires $500 per month for gas, he could reasonably spend $50 less per month on cigarettes (on which he currently spends $300 per month)[3] in order to make his monthly repayment. In fact, plaintiff admits that he has been paying $50 per month to the SSA since ALJ Rayner's May 2, 2012 decision. (AR 462.) In short, the Court finds that ALJ Crawley's assessment of plaintiff's ability to repay the overpayment is supported by substantial evidence.[4]

Finally, repayment is not against equity of good conscience. As explained above, recovery of overpayment is "against equity and good conscience" if the individual "[c]hanged his or her position for the worse" or "relinquished a valuable right" in reliance on the overpayment. 20 C.F.R. § 404.509(a). Plaintiff "has the burden of showing a change in position for the worse in order to demonstrate that recovery would be against equity and good conscience." *Tejada v. Colvin*, No. 14-CV-841 JLC, 2014 WL 4744435, at *6 (S.D.N.Y. Sept. 24, 2014). Here, plaintiff has not argued, and nothing in the record indicates, that he

---

[3] The Court doubts that the cost of cigarettes constitutes an "ordinary and necessary living expense" under the pertinent regulations, but, for purposes of this Memorandum and Order, will assume that such cost qualifies.

[4] Although ALJ Crawley stated that plaintiff's expenses were not reasonable and appeared inflated, this is not a case where plaintiff's credibility is at issue. ALJ Crawley's analysis assumed that plaintiff was in fact spending the amounts that he reported spending each month, and concluded that those expenses could reasonably be reallocated. This Court also assumes plaintiff's assertions to be true.

7

changed his position for the worse or relinquished a valuable right in reliance on the overpayments.

### V. CONCLUSION

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings, denies plaintiff's motion for judgment on the pleadings, and affirms ALJ Crawley's decision. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 28, 2018
Central Islip, New York

\*\*\*

Plaintiff is represented by Howard D. Olinsky, Esq., Olinsky Law Group, One Park Place, 300 South State Street, Syarcuse, New York 12302. The Commissioner is represented by Assistant United States Attorney Megan J. Freismuth of the U.S. Attorney's Office, 610 Federal Plaza, Central Islip, New York 11722.